UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRICKLAYERS & ALLIED CRAFTWORKERS ADMINISTRATIVE DISTRICT COUNCIL OF NEW JERSEY,**<br><br>Petitioner,<br><br>v.<br><br>APS CONTRACTING, INC.<br><br>Respondents. | Civ. No. 2:16-7646<br><br>(KM) (MAH)<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

The petitioner here asks the Court to confirm an arbitration award originally entered on consent, but now opposed by respondent. Respondent suggests that the Court should involve itself in enforcing a settlement agreement of which the petitioner is allegedly a third-party beneficiary. I will decide the case as presented by the petition, confirm the award, and enter judgment against the respondent.

## I. BACKGROUND

### A. The Arbitration Award

Respondent APS Contracting, Inc. ("APS"), is a construction company. Petitioner Bricklayers & Allied Craftworkers Administrative District Council of New Jersey ("BAC") is a union. APS and BAC have entered into a collective bargaining agreement in which APS is required to contribute to various funds that provide fringe benefits to union members. (Marimon Aff. ¶¶ 1, 5, CBA XI § 1)[1]

---

[1] Citations to items in the record are abbreviated as follows:

"Marimon Aff." — Affidavit of Nicole Marimon, Esq., submitted in support of Petitioner's Motion to Confirm the Arbitration Award, ECF. No. 5

1

In the summer of 2013, APS contracted with Union County Improvement Authority ("Authority") to construct the Union County Family Courthouse (the "Project"). With BAC, APS entered into a Project Labor Agreement ("PLA") under which APS was required to contributed to certain employee benefit funds. From Fidelity and Deposit Company of Maryland and Zurich American Insurance Company ("Sureties"), APS procured a performance bond. (Marimon Aff. ¶¶ 2-3, PLA, Art. 11; Carmalt Aff. ¶ 2, Ex. A)

On April 30, 2015, Authority terminated APS from the Project for cause. (Carmalt Aff. ¶ 3, Ex. B)

On May 14, 2015, BAC notified APS that it owed $55,715.86 in benefits funds contributions and dues check-off for work performed on the Project from March 2 to April 24, 2015. About two weeks later, BAC filed a demand for arbitration pursuant to the CBA and the PLA. (Marimon Aff., ¶¶ 7-9, 11, Ex. C-D)

On July 16, 2015, Sureties and Authority executed a Takeover Agreement. Sureties agreed "to perform and complete . . . all the work required of APS under the Contract" and "arrange for the discharge or bond-off all liens not already addressed by APS" in exchange for "APS's rights to payment and compensation under the Contract." The Takeover Agreement appointed the

---

"Carmalt Aff." — Certification of Daniel Carmalt, Esq., submitted in support of Respondent's Opposition to Petitioner's Motion to Confirm the Arbitration Award, ECF. No. 10

"PLA" — Copy of the Project Labor Agreement Covering Construction of the Union County Family Court Building in Elizabeth, New Jersey between APS and the Union County Building and Construction Trades Council, AFL-CIO, attached as Ex. A to Marimon Aff., ECF No. 5-1

"CBA" — Copy of the Building Contractors Association of New Jersey, Masonry Contractors of New Jersey, Building Contractors Association of Atlantic County, and the International Union of Bricklayers and Allied Craftworkers/Administrative District Council of New Jersey, Local Union Nos. 2,4 & 5, attached as Ex. B to Marimon Aff., ECF No. 5-2

"Arb. Award." — Copy of the Award and Order Issued by J.J. Pierson, Esq., on December 31, 2015, attached as Ex. E to Marimon Aff., ECF No. 5-5.

Vertex Companies, Inc. ("Vertex") as Sureties' representative to complete the Project. Neither APS nor BAC is a party to the Takeover Agreement.[2] Sureties and Authority agreed that they did not "intend . . . to create any third-party beneficiaries" or to "extend or increase . . . Surety's liabilities or obligations." (Carmalt Aff. ¶ 6, Ex. D ¶¶ 2, 6-8)

On August 6, 2015, APS and BAC attended a hearing before arbitrator J.J. Pierson. APS conceded liability for $55,715.86 in delinquent fringe benefit contributions and dues check off for work completed from March 2, 2105 to April 24, 2015. APS represented, however, that Sureties would satisfy BAC's claim pursuant to the Takeover Agreement after Pierson issued an award confirming BAC's claim and APS's obligation to pay it. (Award pp. 1-2)

Sometime in December 2015 (the agreement is not dated), BAC agreed to "release and waive any and all claims for contribution and dues check off" alleged to be due from Sureties to BAC "pursuant to the Takeover Agreement" in exchange for $30,000 (the "Settlement Agreement"). APS is not a party to the Settlement Agreement. (Carmalt Aff. ¶ 8, Ex. F)

Finding the claim uncontested, on December 31, 2015, Pierson awarded BAC $55,715.86. (Award p. 3) The arbitrators' fee was $2,500.

About a week later, on January 7, 2016, Vertex issued BAC a check for $30,000. The top left of the check looks like this:

**THE VERTEX COMPANIES INC**
**FBO APS CONTRACTING**
**400 LIBBEY PARKWAY**
**WEYMOUTH MA 02189**

"FBO", everyone agrees, means "For the Benefit Of." (Carmalt Aff. ¶ 10, Ex. G)

---

[2] The parties at least contemplated that APS might acquiesce to the Takeover Agreement, however. Below the Authority and the Sureties' signatures is an empty signature line for APS.

3

### B. This Petition and Motion to Confirm

On October 25, 2016, BAC moved to confirm the arbitration award and enter judgment against APS totaling the full amount of the award (plus half of Pierson's fee and attorneys' fees and costs) under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. 185 and section 9 of the Federal Arbitration Act, 9 U.S.C. 9. BAC did not mention the Settlement Agreement or indicate that it had informed the arbitrator that Vertex had sent it a $30,000 check for the benefit of APS. (ECF Nos. 4-5)

APS filed an opposition and cross-petition to enforce the Settlement Agreement the following month. APS doesn't really contest the arbitrator's award. It claims instead that Sureties negotiated and settled BAC's fringe benefit claims on its behalf. As APS sees things, the Settlement Agreement and the $30,000 check Vertex sent BAC "for the benefit of APS" released it from any further fringe benefit or dues check off claims BAC may have had against it. (ECF No. 9-10)

In December 2016, BAC responded. It contends that APS's motion is tantamount to a motion to vacate the arbitration award and is untimely. It claims alternatively that APS is not an intended third-party beneficiary of the Settlement Agreement. Acknowledging that it has received partial satisfaction of its fringe benefit claim by settling with Sureties, it now requests that I enter judgment against APS totaling $26,965.86—the full amount owing under the arbitration award (including the arbitrator's fee) minus $30,000. (ECF No. 15) It still requests attorneys' fees and costs.

## II. DISCUSSION

### A. Petition to Confirm the Arbitrator's Award

As to the petition to confirm, the issue is a narrow one. Does the arbitrator's award draw its essence from the CBA or PLA? If so, I must uphold it.

A district court's review of an arbitration award is "severely limited." *Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F.2d 52, 56 (3d Cir. 1989); *Swift Indus. V. Botany Indus.*, 466 F.2d 1125, 1130 (3d Cir. 1972). The Third Circuit has explained that "the terms of the arbitral award will not be subject to judicial revision unless they are completely irrational." *Mut. Fire*, 868 F.2d at 56. Accordingly, a court may vacate an arbitration award only in extreme circumstances. "Only when an arbitrator acted in manifest disregard of the law, or if the record before the arbitrator reveals no support whatsoever for the arbitrator's determination, may a district court invade the province of the arbitrator." *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 380 (3d Cir. 1995) (internal quotation omitted). Indeed, so long as the arbitrator's award "draws its essence" from the Agreement in question, a Court should not vacate the award.

> A court may vacate an arbitrator's award if it does not draw its essence from the collective bargaining agreement, but instead represents the arbitrator's own brand of industrial justice. This exception is a narrow one. An arbitration award draws its essence from the bargaining agreement if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention.

*Tanoma Min. Co. v. Local Union No. 1269, United Mine Workers of Am.*, 896 F.2d 745, 747-48 (3d Cir. 1990) (internal quotations omitted).

Under this lenient and deferential standard of review, the arbitrator's award must be upheld in its entirety because it is consistent with the terms of the CBA and PLA. APS was required to make benefit contributions to certain employee benefit funds under Article 11 of the PLA and Article XI of the CBA. The arbitrator cites the PLA provisions in finding that that APS "violated the Project Labor Agreement . . . by failing to remit fringe benefit contributions and dues check-off" for work performed from March 2, 2015 to April 24, 2015. (Award pp. 2-5) In the arbitration proceedings, APS conceded that it was liable

5

for $55,715.86 in delinquent contributions,[3] plus the arbitrator's fee. (*Id.* at 2) This award necessarily "derive[s] from" the parties' agreements, *Tanoma Min. Co.*, 896 F.2d at 747-48, and therefore must be upheld.

APS's allegation that a third-party settlement released these claims, *see* Section II.B, *infra*, is not strictly within the bounds of my review of the arbitration award. All I need ask, and all I may ask, is whether the arbitrator's award "can *in any rational way* be derived" from the CBA or PLA. *Brentwood Med. Assocs. v. UMW*, 396 F.3d 237, 241 (3d Cir. 2005) ("Once a court is satisfied that an arbitrator's award draws its essence from a collective bargaining agreement, it is without jurisdiction to consider the award further.") (emphasis in original). The settlement potentially preceded the arbitrator's rendering of the award. It is not my role "to correct factual or legal errors made by an arbitrator," especially alleged errors or omissions that were not brought to the arbitrator's attention and are raised for the first time in this Court. *Id.* Because—as APS conceded before the arbitrator—the award here construes and applies the CBA and PLA, I must uphold it, and so I do.

There seems to be no disagreement that the total amount of the delinquent payments was $55,715.86, plus half the arbitrator's fee, for a total of $56,965.86. The parties also agree to the extent that, if judgment is entered, it should be reduced by the $30,000 already paid by Sureties. To prevent double recovery, then, the amount of the judgment would be reduced to $26,965.86. It is that amount that remains at issue.

### B. Cross-Petition to Enforce Settlement Agreement

APS's cross-petition alleges that it does not owe the $26,965.86 because the Settlement Agreement waives any claim by BAC to amounts above $30,000. Although APS is not a party to that settlement, and Sureties is not before this Court, APS seeks to enforce the settlement for its own benefit. It

---

[3] The arbitrator nevertheless independently found that BAC's method of computing the benefits owed was reliable. (Arb. Award 4)

says that when BAC released its remaining fringe benefits claims against Sureties, it impliedly released them against APS as well.

In general, a district court does not lack jurisdiction to enforce a final and binding settlement of a § 301 dispute. A settlement, like an arbitration, "can be judicially enforced in federal court as long as the settlement is final and binding under the contract." *United Mine Workers v. Consolidation Coal Co.*, 666 F.2d 806, 810 (3d Cir. 1981)). And the CBA here does provide for the resolution of disputes via settlement instead of arbitration. (CBA Art. XV.D)

> To be judicially enforceable, however, a settlement agreement, like an arbitration award, must be sufficiently specific as to be capable of implementation. [citing *United Mine Workers v. Barnes & Tucker Co.*, 561 F.2d 1093 (3d Cir. 1977)]. To avoid preempting the factfinding functions which the parties have contractually assigned to the grievance machinery and arbitration, courts will not attempt to enforce a settlement agreement that is too vague or ambiguous in its meaning or effect.

*Id.* at 810.

Thus, "to enforce a settlement agreement to resolve a dispute that is otherwise governed by a binding arbitration provision: (1) the agreement must be final and binding; (2) the agreement must be sufficiently specific to be capable of implementation; and (3) there must be 'positive assurance' that the agreement is intended to cover the relevant dispute." *Trenton Metro. Area Local of the Am. Postal Workers Union v. United States Postal Serv.*, 636 F.3d 45, 53 (3d Cir. 2011).

Given the evidence in the record and the circumstances surrounding the Settlement Agreement, I cannot say that BAC's release of claims under the bond against Sureties was intended to be a final and binding resolution of BAC's fringe benefit claims against APS. Nor can I say that BAC or Sureties intended for APS to be a third-party beneficiary of the Settlement Agreement. *E.g., Ross v. Lowitz*, 120 A.3d 178, 191 (N.J. 2015) ("It is a fundamental premise of contract law that a third party is deemed to be a beneficiary of a

7

contract only if the contracting parties so intended when they entered into their agreement.")

It is true that Sureties, through Vertex, sent BAC a $30,000 check "for the benefit of APS." The Settlement Agreement itself, however, does not contain any language suggesting that the parties intended BAC's release of any remaining claims against Sureties would inure to the benefit of APS. "Positive assurance" that the Settlement Agreement was intended to cover this fringe benefits dispute is lacking.

In short, although a court will enforce a settlement or an arbitration award, here we allegedly have both. The effect of the settlement on APS's obligations is vague, and "[t]o avoid preempting the factfinding functions which the parties have contractually assigned to the grievance machinery and arbitration, [this court] will not attempt to enforce a settlement agreement that is too vague or ambiguous in its meaning or effect." *Consolidation Coal*, 666 F.2d at 810–11.

To look at it another way, Sureties' liability to BAC arose, not from the collective bargaining agreement, but from the performance bond. The intent of the Settlement Agreement between BAC and Sureties seems to have been to resolve BAC's claims against Sureties under the bond. Neither the bond nor the Settlement Agreement, however, purported to extinguish BAC's rights against APS under its PLA or CBA. At most, then, APS seems to have derived an incidental, but not intended, benefit from the Settlement Agreement. *E.g., Ross*, at 189-90 ("When a court determines the existence of 'third-party beneficiary' status, the 'inquiry focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement.'") (quoting *Broadway Maint. Corp. v. Rutgers*, 90 N.J. 253, 259 (1982)).

To look at it yet another way, the point has been waived. The BAC/Sureties settlement potentially preceded (but was executed no later than)

8

the arbitrator's award. APS did not suggest to the arbitrator that the settlement was an alternative to the arbitration or that it was a defense to the claims in arbitration.

APS's "cross-petition" to enforce the Settlement Agreement as against the arbitrator's award is therefore denied without prejudice to whatever other remedies it may seek to pursue.

### C. Costs and Fees

With respect to attorneys' fees and costs, the CBA entitles BAC to an award of fees and costs in connection with an action to recover delinquent benefit fund contributions. (CBA Art. XI §1.H) BAC has presented billing records of its legal fees pertaining to this matter. Counsel for BAC billed for two associates at $200 an hour, one of counsel for $260 an hour, and one paralegal at $90 an hour. (ECF Nos. 17, 17-1) I find the total amount counsel requests, $7,019 representing 37.1 hours of work, to be reasonable. The $400 filing fee for this action is recoverable. I will therefore award $7,553.15 in legal fees and costs.

## III. CONCLUSION

The arbitrator's award of $56,965.86 is confirmed. BAC and APS agree that this amount should be reduced by the $30,000 already paid by Sureties, to eliminate double recovery. Judgment shall therefore be entered in the amount of $26,965.86, plus $7,553.15 in attorneys' fees and costs.

Dated: June 8, 2017

_____
**KEVIN MCNULTY**
**United States District Judge**